UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BONITA I. JOHNSTON,

    Plaintiff,

v.                                                      CASE NO: 8:07-cv-179-T-26EAJ

MORTON PLANT MEASE HEALTHCARE, INC.,

    Defendant.
_____/

## **O R D E R**

Before the Court is Defendant's Motion for Summary Judgment and Statement of Undisputed Facts (Dkts. 21 & 22), Plaintiff's Memorandum in Opposition and Statement of Disputed Facts (Dkts. 40 & 42), and various depositions, affidavits, and exhibits. (Dkts. 23-29, 31-36, & 41).  After careful consideration of the motion, the submissions of the parties and the entire file, the Court concludes that the motion should be denied.

### **PERTINENT FACTS**

The following facts are set forth in the light most favorable to the non-moving party, the Plaintiff, Bonita Johnston.  Defendant Morton Plant Mease Healthcare, Inc. (Morton Plant Mease) hired Ms. Johnston in April 1999 as a Clinical Nurse II (CN-II) in the Mobile Crisis Unit at the hospital.  When she applied for the job, she filled out a

...

Health History form on which she indicated that she had spina bifida since 1981.[1] No restrictions are noted on the application. The Placement Medical Evaluation (PME), which was completed by the nursing staff at the hospital, indicates that position of CN-II requires, among other factors, standing, walking, and stooping up to 75% of the day, lifting up to 100 pounds, and pushing and pulling up to 75 pounds.[2]

Ms. Johnston worked as a CN-II for over a year without incident until August 2000, when the hospital discovered that Ms. Johnston had a handicapped permit which enabled her to park in a handicapped parking space. The department for employee health at Morton Plant Mease requested that Ms. Johnston complete a PME to evaluate her special needs. Her treating physician, Dr. Thomas Harrison, completed the PME and noted the following restrictions on Ms. Johnston's duties: no carrying over five pounds; no pushing/pulling over five pounds; no lifting over ten pounds; no prolonged standing or walking over 75% of the time; no prolonged sitting over 50% of the time; no prolonged bending or kneeling over 75% of the time.[3]

The bottom of the PME was signed August 29, 2000, by a nurse with the department of employee health, acknowledging that the restrictions could be accommodated.[4] After the PME was evaluated, the hospital continued to allow Ms.

---

[1] See docket 23, Johnston dep., Exh. 1.

[2] See docket 23, Johnston dep., Exh. 2.

[3] See docket 23, Johnston dep. Exh. 5.

[4] See docket 23, Johnston dep. Exh. 5.

Johnston to park in the handicapped spots which are nearer to the hospital.[5]  As another consequence of the PME, the hospital allowed Ms. Johnston to remain as a CN-II because, according to two of the employees,[6] a CN-II did not have any direct patient care responsibilities.[7]

On October 13, 2000, two months later, Ms. Johnston inquired about the then available CN-III position in the pediatric psychiatric unit.[8]  After initially being turned down for the position, Ms. Johnston filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  The hospital thereafter offered her the position of CN-III in January 2001 with the accommodation that she did not have to participate in patient take-downs.[9]  The offer was contingent on Dr. Harrison's reviewing the job description and certifying that Ms. Johnston could perform the essential functions of the job.[10]  After reviewing the job description for CN-III with an eye toward the lifting, pushing and pulling requirements, Dr. Harrison did not place any specific restrictions on

---

[5]  See docket 26, Like dep., pp. 18-19.

[6]  Nurse Like was the manager of the employee health department at all relevant times.  Mr. Yanick, the Director of Behavioral Health, served as a supervisor of Ms. Johnston when she became a CN-III.

[7]  See docket 26, Like dep., p. 14; docket 28, Yanick dep., p. 37.

[8]  See docket 23, Johnston dep. pp. 53-54.

[9]  See docket 28, Yanick dep. pp. 40-41.

[10]  See docket 28, Yanick dep. p. 13; docket 23, Johnston dep. pp. 62-63.

Ms. Johnston's duties.[11]  He wrote that in his opinion, "the activities outlined in this job description may cause her more pain but *will not result in any additional disability* over what she already suffers.  I see no contraindication to her *attempting* to fulfill this position."[12]  (Emphasis added.)

Ms. Johnston worked in the position of CN-III until 2005.  On June 17, 2005, Ms. Johnston experienced an incident called a "takedown" with an adolescent boy, leaving her with a strained back muscle.[13]  She took several days off work to recover, and when she returned to work, the hospital requested Dr. Harrison examine her to submit a new PME.[14]  Dr. Harrison concluded that Ms. Johnston could not participate in takedowns of patients.[15]  The department of employee health determined that Ms. Johnston could no longer continue working as a CN-III and notified her of same on September 8, 2005.[16]  Ms. Johnston accepted a position as a senior research nurse in October 2005 for fewer hours and hence, less income and satisfaction.[17]  She resigned to take a position in Arizona.[18]

---

[11]  See docket 23, Johnston dep., Exh. 8.

[12]  See docket 23, Johnston dep., Exh. 8.

[13]  See docket 23, Johnston dep. pp. 71, 80-82 & 97.

[14]  See docket 23, Johnston dep. pp. 119-120; docket 26, Like dep. p. 26.

[15]  See docket 26, Like dep. pp. 27, 38-39 & Exh. 7.

[16]  See docket 34 Sheehan dep. pp. 31-32; docket 23, Johnston dep. p. 121.

[17]  See docket 23, Johnston dep. p. 122 & Exh. 20.

[18]  See docket 23, Johnston dep. pp. 128-129.

The evidence regarding whether an accommodation had been given to Ms. Johnston to be relieved of participating in takedowns is conflicting. Apparently, according to the hospital, nothing in the file reflected that she had ever been granted such an accommodation. For the reasons set forth below, the Court finds that there are genuine issues of material fact which preclude entry of summary judgment on the three remaining counts of the Complaint.[19]

## ANALYSIS

This action seeks relief under the American with Disabilities Act (ADA), the Florida Civil Rights Act (FCRA), and the Family Medical Leave Act (FMLA).[20] First, looking at the ADA and FCRA claims, Ms. Johnston must establish a prima facie case of discrimination under the ADA by establishing the following three factors: (1) she has a disability; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. See Morisky v. Broward County, 80 F.3d 445, 447 (11th Cir. 1996). To show that she has a disability, she must prove one of three criteria: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) being "regarded as" having such an impairment. See 42 U.S.C. § 12102(2); Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1215 (11th Cir. 2004). Under the third prong, if an employer perceives the

---

[19] See docket 11, Order dated Feb. 20, 2007, remanding count I.

[20] See docket 2, Complaint.

individual as having a disability but there is no factual basis for one, then the individual is considered to be disabled for purposes of the ADA, as long as the perceived impairment would substantially limit a major life activity. Carruthers, 357 F.3d at 1216 (citing Sutton v. Lader, 185 F.3d 1203, 1208 (11th Cir. 1999)).

Ms. Johnston relies on the third prong to defeat summary judgment and takes the position that Morton Plant Mease regarded her as disabled, the disability being spina bifida. She claims that, in addition to being regarded as disabled, she had a record of having the impairment of spina bifida.[21] Regardless of whether spina bifida is or is not a disability, the issue is whether Morton Plant Mease perceived her as being disabled. She contends that the hospital perceived her as being substantially limited in the major life activity of working in a broad range of positions, including charge nurse.

There is no question that Morton Plant Mease did not allow her to remain in the position of CN-III for very long, if at all, when she returned to work after the June 2005 incident involving the patient. She asserts that Deane v. Pocono Medical Center., 142 F.3d 138 (3d Cir. 1998) (en banc), is similar in that the medical center in Deane had exhibited internal confusion about the extent of Deane's physical limitations resulting from her wrist injury. In Deane, the Third Circuit concluded that summary judgment

---

[21] Although she cites cases for the proposition that spina bifida is a disability, there is at least one opinion in which spina bifida was held not to constitute a disability under the particular facts of that case. See Access Now, Inc. v. Town of Jaspar, 268 F.Supp.2d 973 (E.D. Tenn. 2003). In any event, the relevant inquiry is whether the hospital perceived her spina bifida as substantially impairing the major life activity of working and performing the essential functions of a CN-III.

should not have been granted because factual disputes existed regarding the level of actual impairment Deane suffered. Ms. Johnston likens herself to Deane with respect to the employer's perception. Morton Plant Mease, she claims, exaggerated her physical condition as suddenly rendering her unable to work in any position in which there was a potential for assault or unexpected physical hazards. She claims that after the incident, Morton Plant Mease viewed her as a direct threat to herself and patients in the sense that she could be harmed at any time and they could harm themselves or someone else at any time.

The Court finds that the jury could reasonably conclude that Morton Plant Mease was confused about the extent of her physical ailments. The PMEs from 2000 and 2005 could be considered to contain the same restrictions; yet, Morton Plant Mease believed she could no longer perform her job as CN-III, with or without the accommodation of not participating in takedowns. A reasonable jury could find that the hospital had reasonably accommodated her for over four years by not requiring her to participate in takedowns, and then, without any significant change in her capabilities, refused to reasonably accommodate her in the same fashion so that she could continue to serve as a CN-III. The change in heart could be viewed as Morton Plant Mease regarding her as disabled, particularly since the PMEs could be construed as showing no relevant change in ability between 2001 and 2005. Therefore, the Court finds that a genuine issue of material fact exists as to whether Ms. Johnston meets the definition of disabled under the ADA, and hence FCRA, and summary judgment is denied on this ground.

The Court further finds that a genuine issue of material fact exists with respect to whether Ms. Johnston could perform the essential functions of her job as a CN-III, with or without reasonable accommodation.  See D'Angelo v. ConAgra Foods, Inc., 422 F.2d 1220, 1230 (11th Cir. 2005).  In D'Angelo, the court made it clear that individuals regarded by their employers as disabled must be afforded reasonable accommodations. Whether a job function, which in this case would be performing takedowns, is essential must be evaluated using numerous factors that need weighing.  D'Angelo, 422 F.3d at 1230 (citing 42 U.S.C. § 12111(8); Davis v. Florida Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000); 29 C.F.R. § 1630.2(n)(1)(3); Holbrook v. City Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997).  Because the record in this case contains some evidence that participation in takedowns is an essential function of CN-IIIs[22] and some evidence that takedowns are not an essential function,[23] the Court finds this issue should be left for jury to decide.[24]  See Lowe v. Alabama Power Co., 244 F.3d 1305, 1309 (11th Cir. 2001)

---

[22]  Some of the employees of Morton Plant Mease testified that takedowns are an essential function of a CN-III.

[23]  Ms. Johnston had worked in the position of CN-III for over four years without encountering a situation in which she was needed in a takedown.

[24]  Whether Morton Plant Mease waived the "direct threat" defense will be better left for consideration at trial in view of the fact that Morton Plant Mease has not had an opportunity to respond to this argument made in Ms. Johnston's response.

(denying summary judgment where genuine issues of material fact existed as to what constituted essential functions of job).[25]

Finally, addressing the FMLA interference claim, the Court finds that there are genuine issues of material fact with respect to whether Ms. Johnston was denied her right to reinstatement as a charge nurse. For the reasons associated with the genuine issues pertaining to whether she could perform the essential functions of the position, summary judgment on the FMLA claim is denied. It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 21) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on January 22, 2008.

  s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[25] The Court finds that the disparate treatment claims under the ADA and FCRA must be permitted to proceed to trial for the same reasons as set forth in this order and the fact that Ms. Johnston's former supervisor identified two individuals who also never took a physical role in a takedown. See docket 28, Yanick dep. pp. 42-43.